**UNITED STATES DISTRICT COURT**
**WESTERN DIVISION OF LOUISIANA**
**SHREVEPORT DIVISION**

DIANA THOMAS                                    CIVIL ACTION NO. 06-1078

VERSUS                                          JUDGE S. MAURICE HICKS, JR.

CITY OF SHREVEPORT, ET AL.                      MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 50) filed
by the defendants, the City of Shreveport ("the City"), David Kent ("Kent"), and Richard
Salley ("Salley").  The plaintiff, Diana Thomas ("Thomas"), opposed the Motion for
Summary Judgment.  See Record Document 59.  For the reasons which follow, the Motion
for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

**BACKGROUND**

Thomas, an African American female, became employed with the Shreveport Police
Department ("SPD") in 1990 as a jailer.  She moved to the position of police officer in 1991.
She was promoted to the rank of Corporal in 2002 and Sergeant in 2007.

In October 2002, a position within the Crime Scene Investigation Unit ("CSIU") was
announced and advertised in accordance with SPD policy.  At this time, Kent was the
lieutenant in command of the CSIU.  Thomas and Corporal David Walls ("Walls"), a white
male, were among those who applied for the position.  Both Thomas and Walls scored 18
on their interviews, which were conducted by Kent and Corporal Amy Mueller ("Mueller").
The applicant with the highest score was to be selected for the position.  Kent and Mueller
stated that they recommended Walls for the position based upon his work as a patrol
officer.  Kent submitted his written recommendations to Salley, who was the Captain for

Information Services Bureau, which the CSIU fell under. Salley was responsible for reviewing the recommendation and then forwarding it to his supervisor, who would in turn submit the recommendation to the Chief of Police for final consideration.

After a review of the written recommendation, Kent and Salley discussed implementing a tie breaker and decided to review the latent fingerprints submitted by Thomas and Walls for 2002. According to the defendants, this method was chosen because it was an integral part of a CSI officer's duties. Walls submitted four Automated Fingerprint Identification System quality fingerprints. Thomas did not submit any fingerprints for the year 2002. In light of this information, Walls was selected for the CSIU position on December 6, 2002, and the selection was effective on December 16, 2002.

On January 21, 2003, Kent wrote an Inter-Office Memorandum ("IOC") in response to Thomas' inquiry as to why Walls was selected for the CSIU position. On January 27, 2003, Thomas wrote an IOC to Salley wherein she objected to the selection process. Salley personally met with Thomas to discuss her objections. Thomas voiced her concerns regarding the use of latent fingerprints as the tie breaker, but did not raise the subject of race or gender discrimination during this meeting.

On February 11, 2003, Thomas wrote an IOC to Assistant Chief Bill Wilson ("Wilson"), who was Salley's supervisor. In this IOC, Thomas claimed for the first time that the selection of Walls for the CSIU position was based on race and gender. The IOC was copied to then Chief of Police Jim Roberts. Chief Roberts requested to view the documented fingerprints, but does not recall seeing the fingerprints. He also does not recall writing an IOC in response to Thomas' grievance.

Thomas maintains that she was informed by Assistant Chief Franklin that Chief

Roberts would create a position for her in the CSIU. According to Thomas, she declined the offer believing the environment may be hostile since many of the CSI investigators would not speak to her as they passed in the hallways and due to the grievance filed by Salley, which will be discussed below. Thomas continued her position as a community liaison officer.

On February 19, 2003, Salley issued an IOC to Wilson refuting Thomas' allegations of race and gender discrimination. <u>See</u> Record Document 69, Exhibit T. On that same date, Salley filed a grievance against Thomas for harassment and insubordination in accordance with SPD General Order 305.13, which allows officers to file grievances against other officers. <u>See</u> Record Document 50, Exhibit 4 at 121. Salley did not speak to any of Thomas' supervisors about this grievance and did not otherwise publicly discuss the grievance. Grievances filed under SPD General Order 305.13 are not placed in personnel records. Salley's grievance was not investigated and was not submitted to Chief Roberts. Salley's grievance was not a formal charge of insubordination filed with Internal Affairs.

In early 2005, a vacancy in the CSIU became available. The interview process was conducted by Mueller, Sergeant Bickham, and Sergeant Lewis. Thomas was selected for the position. She started her position in late April 2005. Thomas was issued a police van with the necessary supplies and equipment, a digital camera, and a digital video camera. She was also given a tour of the unit and met with Kent to discuss the types of cases handled by the CSIU, the procedures for case call outs, and training.

On May 23, 2005, Kent and another corporal met with Thomas to obtain feedback from her regarding her CSI training thus far, which included, among other things, proper

technique and use of the digital and video cameras; report writing; processing evidence; processing fingerprints; and how to prepare computerized crime scene diagrams. <u>See</u> Record Document 50, Exhibits 115-136. Thomas also kept notes that confirm the aforementioned training. <u>See id.</u>, Exhibit 149. Kent instructed Thomas to continue to follow the CSI officers' instructions, take notes, and read the operation manuals for the digital and video cameras prior to training classes. Despite the training and feedback, it appeared that Thomas was not grasping the technical functions of the digital and video cameras. <u>See id.</u>, Exhibits 131-134.

In June and July 2005, Thomas received Supervisor's Action Reports ("SAR") for falling asleep during training and failing to transfer evidence to the property room after reporting that it had been done. Thomas was given the opportunity to review, comment and sign the SARs. SARs are a step below a letter of reprimand and do not constitute formal discipline under the civil service system and SPD general orders.

On August 11, 2005, while Kent was in the process of setting up the cameras for a second digital video camera function test, Thomas advised him that she wanted to transfer from the CSIU. She stated that the job was too technical. On that same date, Thomas issued an IOC to Kent requesting a meeting with the human resources supervisor and the commander of support services. The meeting occurred on August 15, 2005. At the conclusion of the meeting, Thomas made a formal written request to be transferred from the CSIU. She did not make any complaints of a hostile work environment or retaliation during the meeting.

Thomas filed suit on June 26, 2006 and later amended her complaint in April 2007 and January 2008. <u>See</u> Record Documents 1, 16, & 37. Thomas has asserted

employment discrimination and retaliation claims pursuant to Title VII, 42 U.S.C. § 1983, 42 U.S.C. § 1981, the Equal Protection Clause of the United States Constitution, and Louisiana state law claims against the City, Kent, and Salley. The defendants filed answers and asserted multiple defenses including statute of limitations, failure to exhaust administrative remedies, and qualified immunity. <u>See</u> Record Documents 4, 26, & 38. On March 25, 2008, the defendants filed the instant Motion for Summary Judgment seeking dismissal of all claims. <u>See</u> Record Document 50.

## LAW AND ANALYSIS

**I.      Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Stahl v. Novartis Pharm. Corp.</u>, 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." <u>Littlefield v. Forney Indep. Sch. Dist.</u>, 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a

judgment in favor of the nonmovant, then summary judgment should be granted.  See

Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

## II.    Claims Relating to 2002-2003 Events.

Thomas conceded that many of her claims relating to events that occurred in 2002-

2003 have prescribed.  See Record Document 59 at 2-3.  Specifically, in opposing the

Motion for Summary Judgment, she stated:

> Defendants contend that Plaintiff has no causes of action and/or such claims
> have prescribed for violation of Equal Protection Clause for claims arising in
> either 2002 or 2003.  Plaintiff agrees.  The time for a 42 U.S.C. § 1983 and
> a Title VII action brought for violation of the U.S. Constitution [has]
> prescribed for acts that occurred in 2002-2003.  Further, any claims under
> Louisiana state law for claims arising in 2002 or 2003 have likewise
> prescribed.
>
> . . .
>
> Plaintiff agrees that any state law claims or Equal Protection Clause claims
> have prescribed for the 2002-2003 claims.

Id. at 3.  Thus, the only viable cause of action for claims relating to events that occurred

in 2002 or 2003 is Thomas' 42 U.S.C. § 1981 claims against the City, Kent, and Salley,

which she has asserted through 42 U.S.C. § 1983.[1]

---

[1]Title 42, Unites States Code, Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State . . ., subjects, or causes to be subjected, any citizen
> of the United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Section 1983 is the vehicle through which Thomas must assert her
Section 1981 employment discrimination claims against the City and state actors.  See Jett
v. Dallas Independent Sch. Dist., 491 U.S. 701, 109 S.Ct. 2702 (1989); Felton v. Polles,
315 F.3d 470 (5th Cir. 2002), abrogated on other grounds by Burlington N. & Santa Fe Ry.

Section 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. §1981(a).  Section 1981's protections against racial discrimination "include[] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b); see also Felton v. Polles, 315 F.3d 470, 483 (5th Cir. 2002), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405 (2006).

A.    **Statute of Limitations.**

While the issue is somewhat unsettled, the Court finds that the correct statute of limitations applicable to Thomas' Section 1981 claims is four years, not one.  In reaching this conclusion, the Court found persuasive guidance in both Knox v. City of Monroe, 551 F.Supp.2d 504 (W.D. La. March 12, 2008) and Mitchell v. Crescent River Port Pilots Ass'n, No. 07-30525, 2008 WL 410414 (5th Cir. Feb. 14, 2008).[2]

In Mitchell, the Fifth Circuit addressed the proper statute of limitations to be applied in a Section 1983 action asserting Section 1981 rights.  Mitchell alleged that he was denied participation in an apprenticeship program to become a river port pilot due to his race. The district court dismissed a number of his claims as untimely because they were not filed within one year.  On appeal, the defendants argued that the district court correctly applied

Co. v. White, 548 U.S. 53, 126 S.Ct. 2405 (2006).

[2]Mitchell is an unpublished opinion and is not binding precedent.  Likewise, Knox serves as only persuasive authority from a sister court within this district.  However, this Court finds the analysis in both opinions to be sound and consistent with Supreme Court precedent on the statute of limitations issue.

Louisiana's one-year statute of limitations, while Mitchell maintained that the federal "catchall" four-year statute of limitations set forth in 28 U.S.C. § 1658 applied. The Mitchell court reasoned that, in 1990, Congress passed this catchall four-year statute of limitations applicable to actions arising under federal statutes enacted after December 1, 1990. In Jones v. R.R. Donnelley & Sons, Co., 541 U.S. 369, 124 S.Ct. 1836 (2004), the Supreme Court interpreted Section 1658 and stated that "a cause of action aris[es] under an Act of Congress enacted after December 1990-and therefore is governed by Section 1658's 4-year statute of limitations-if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." Mitchell, 2008 WL 410414, *3 (quoting Jones, 541 U.S. at 382, 124 S.Ct. 1836). In Jones, the causes of action (wrongful termination, refusal to transfer, and hostile work environment) related to current employment, arose under the 1991 revision to the Civil Rights Act, and, accordingly, were subject to the four-year statute of limitations. See id. Conversely, the causes of action in Mitchell related to pre-employment claims, which were actionable under §1981 prior to the 1991 amendments. See id. at *3-4. Thus, Mitchell's Section 1981 claims, asserted through Section 1983, were properly subject to Louisiana's one-year statute of limitation. See id.

Here, as in Knox, Thomas asserts employment discrimination claims which were not actionable under Section 1981 until the 1991 Civil Rights Act. "Although [Section] 1983 is the vehicle through which these claims are asserted, [Thomas] would have had no cause of action under Section 1983 prior to the 1991 Civil Rights Act." Knox, 551 F.Supp.2d at 512. Thus, Thomas' claims are subject to a four-year statute of limitations and are not

untimely.[3]  Summary judgment on this issue is denied.

**B.    Section 1981 Claims.**

Thomas has sued the City alleging racial and gender discrimination in the transfer/promotion of Walls to the CSI unit of the Shreveport Police Department in 2002. After Thomas was denied the transfer/promotion, she filed a grievance within the Shreveport Police Department complaining of race discrimination.  Thomas contends that Salley then retaliated against her by filing a grievance in February 2003 accusing her of harassment and insubordination.  According to Thomas, she later refused an offer to be transferred/promoted to the CSI Unit for fear of "Salley's strong attitude against her." Record Document 59 at 43.  Thomas alleged these violations under 42 U.S.C. § 1981, which she has asserted through Section 1983.

**1.    Claims Against the City and Kent and Salley in their Official Capacities.[4]**

Thomas has asserted a failure to promote claim and a retaliation claim against the City.  Section 1981 does not itself create a cause of action against a municipality.  Instead, as stated previously, Thomas has asserted her claims complaining of the City's violations of Section 1981 via Section 1983.  See Felton, 315 F.3d at 481-82; Oden v. Oktibbeha County, Miss., 246 F.3d 458, 463-64 (5th Cir.2001).  Accordingly, Thomas "cannot proceed under a theory of respondeat superior and must instead satisfy the 'custom or policy' test

_____

[3]Thomas filed suit on June 26, 2006, less that four years after the CISU position was filled in December 2002.  See Record Documents 1 & 37.

[4]Suits against municipal officers in their official capacities generally represent only another way of pleading an action against an entity of which the officers are an agent.  See Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 361 (1991).  Thomas' suit against Kent and Salley in their official capacities will be treated as a suit against the City.  See id.

fashioned for suits against a municipality under § 1983." Evans v. City of Houston, 246 F.3d 344, 358 (5th Cir.2001). This test "requires proof of three elements in addition to the underlying claim of a violation of rights: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." Cox v. City of Dallas, 430 F.3d 734, 748 (5th Cir.2005) (quoting Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir.2001)) (internal quotation marks omitted).

The Court will first address the failure to promote claim. To establish a violation of Section 1981, Thomas must prove that (1) she is a member of a protected class; (2) there was an intent to discriminate on that basis; and (3) the discrimination concerned one or more of the activities in the statute. See Felton, 315 F.3d at 483; Green v. State Bar of Tex., 27 F.3d 1083, 1086 (5th Cir.1994). While Section 1981 addresses the right to "make and enforce contracts," an employer's failure to promote is actionable under subsection (b) of the statute. See Police Ass'n of New Orleans v. City of New Orleans, 100 F.3d 1159, 1170 (5th Cir.1996). Thomas' Section 1981 failure to promote claim is analyzed under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). See Price v. Fed. Express Corp., 283 F.3d 715, 719-20 (5th Cir.2002); Pratt v. City of Houston, 247 F.3d 601, 606 & nn. 1, 2 (5th Cir.2001).

Here, the Court need not reach the issue of whether Thomas can satisfy the elements of an underlying violation of constitutional rights because she has failed to show any violation of a constitutional right whose moving force was a policy or custom of the City. In the amended complaint, Thomas alleged that "the City of Shreveport is further liable under 42 U.S.C. § 1983 and 42 U.S.C. § 1981 for considering factors in the promotion process which have an adverse impact upon women." Record Document 37,

¶ 9.  She contends that "the questionnaire in use at the time used questions which had an adverse impact upon women due in part to consideration of sick leave which had an adverse impact upon women."  Id. at ¶ 6.  Thomas has not provided lay or expert evidence to support her conclusory allegation that consideration of sick leave has an adverse impact upon women.  Further, she has not demonstrated with competent summary judgment evidence how such a policy was the moving force behind the decision to promote/transfer Walls, and not her, to the CISU.  Accordingly, summary judgment is granted as to Thomas' Section 1981 failure to promote claim against the City.

Next, Thomas asserts a retaliation claim against the City based on the actions of Salley.[5]  The elements of a Section 1981 cause of action for an employee who suffers retaliation in response to her alleging racial discrimination are: (1) that the plaintiff engaged in protected activities; (2) that an adverse employment action followed;[6] and (3) that there was a causal connection between the two.  See Foley v. University of Houston System, 355 F.3d 333, 337 (5th Cir.2003).  Once again, the Court need not reach the issue of whether Thomas can satisfy the elements of an underlying violation of constitutional rights

---

[5]Section V of Thomas' opposition is entitled, "Retaliation by Salley in 2002."  Record Document 59 at 42.

[6]The Fifth Circuit formerly held only "ultimate employment decisions," such as hiring, granting leave, discharging, promoting, and compensation, were actionable "adverse employment actions."  See Hernandez v. Crawford Bldg. Material Co., 321 F.3d 528, 531 (5th Cir.), cert. denied, 540 U.S. 817, 124 S.Ct. 82, 157 L.Ed.2d 34 (2003).  However, the Supreme Court's opinion in  Burlington Northern, 548 U.S. 53, 126 S.Ct. 2405 (2006), altered this adverse employment action standard for retaliation claims.  In Burlington Northern, the Supreme Court held that retaliation is actionable if a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.  Id.

because she has failed to even identify an official policy of the City and/or a violation of a constitutional right whose moving force is the policy or custom.  Simply put, the Court independently scoured the summary judgment record and found not even an allegation that the City had an official policy of retaliation in line with Thomas' allegations against Salley.  Accordingly, summary judgment is granted as to Thomas' Section 1981 retaliation claim against the City.

### 2.    Claims Against Kent and Salley in their Individual Capacities.[7]

While the Fifth Circuit has not yet discussed the full parameters of Section 1981 liability of individual supervisors, it has accepted that "Section 1981 liability will lie against an individual defendant if that individual is essentially the same as the State for the purposes of the complained-of conduct."  Foley, 355 F.3d at 337.  Thomas contends that Kent and Salley "stand in essentially the same shoes as the City since . . . Salley is an actor who retaliated against [her] . . . and . . . Kent likewise made a decision not to promote/transfer [her] into CSIU."  Record Document 59 at 23.  The Court agrees and finds that Kent and Salley are subject to a Section 1981 claim in their individual capacities.

__Failure to Promote__

As stated previously, a failure to promote claim is actionable under Section 1981(b) and is analyzed under the familiar McDonnell Douglas framework.  To establish a *prima*

---

[7]"Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law."  Hafer, 502 U.S. at 25, 112 S.Ct. at 362. In such a suit, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right" and the plaintiff does not have to "establish a connection to governmental policy or custom."  Id.  Officials suit in their personal capacities may also assert personal immunity defenses such as objectively reasonable reliance on existing law. See id.

*facie* case for a failure to promote claim, the plaintiff must show that: (1) she was a member of the protected class; (2) she applied for a position for which she was qualified; (3) she was rejected for the position, thus suffering an adverse employment action; and (4) after she was rejected, the employer filled the position with someone outside the protected class. See Celestine v. Petroleos de Venezuella, S.A., 266 F.3d 343, 354-55 (5th Cir.2001). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendants to articulate a legitimate, non-discriminatory reason for their actions. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S.Ct. 2097, 2106 (2000). Once the defendants have articulated a legitimate, non-discriminatory reason for not offering the plaintiff the transfer/promotion, her *prima facie* case is dissolved and the burden shifts back to her to establish (1) that the defendants' proffered reason is not true but is instead a pretext for discrimination; or (2) that the defendants' reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. See Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).

It is undisputed that Thomas is a member of the protected class, that she applied for a position for which she was qualified, and that after she did not receive the transfer/promotion, the employer filled the position with someone outside the protected class. However, the Court finds that there are genuine issues of material fact as to the third factor of Thomas' *prima facie* case, i.e., whether she was rejected for the position, thus suffering an adverse employment action. The issue is whether the new position in the CSIU was a transfer, a promotion, or a transfer that is deemed a promotion.

The defendants argue that it is a lateral transfer, not a promotion, when a corporeal officer transfers from one unit or division within the police department. Thomas disagrees

and contends that the CSIU position was a promotion or, alternatively, should be deemed a promotion. In <u>Alvarado v. Tex. Rangers</u>, 492 F.3d 605 (5th Cir. 2007), the Fifth Circuit reasoned:

> [T]he denial of a transfer may be the objective equivalent of the denial of a promotion, and thus qualify as an adverse employment action, even if the new position would not have entailed an increase in pay or other tangible benefits; if the position sought was objectively better, then the failure to award the position to the plaintiff can constitute an adverse employment action.

<u>Id.</u> at 614. To determine whether the new position is objectively better, the fact finder considers a number of factors, namely whether the position entails an increase in compensation or other tangible benefits; provides greater responsibility or better job duties; provides greater opportunities for career advancement; requires greater skill, education, or experience; is obtained through a complex competitive selection process; or is otherwise objectively more prestigious. <u>See id.</u> The inquiry is objective and "neither the employee's subjective impressions as to the desirability of the new position nor the employee's idiosyncratic reasons for preferring the new position are sufficient to render the position a promotion." <u>Id.</u>

Here, Thomas has presented evidence sufficient to raise a genuine issue of material fact on whether her non-transfer/non-promotion to the CSIU was an adverse employment action. Thomas has produced evidence that, among other things, there was the potential to earn more money through overtime pay as a CSIU officer, that CSI officers were permitted a take-home vehicle, and that CSI offered more career opportunities than patrol, thus impacting opportunities for advancement. Because Thomas has produced objective summary judgment evidence creating genuine issues of material fact as to whether the

denial of a transfer may be the objective equivalent of the denial of a promotion, it for the jury to determine whether she suffered an adverse employment action. Summary judgment must be denied on this basis alone.

Further, while Kent has articulated a legitimate, non-discriminatory reason[8] for the decision to promote/transfer Walls over Thomas, the Court finds that there are genuine issues of material fact as to pretext, specifically on the issues of whether the interview sheets were intentionally improperly scored as to computer classes and sick leave and whether the use of latent fingerprints was truly a neutral baseline measurement, as Thomas was a community liaison officer in 2002 and virtually had no chance of submitting any fingerprints, as compared to Walls who was a patrol officer in 2002. Again, summary judgment must be denied as to Thomas' Section 1981 failure to promote claim against Kent.[9]

## Retaliation

Salley contends that he did not retaliate against Thomas and, alternatively, that he is entitled to qualified immunity. See Record Document 69 at 17-18. In order to establish

---

[8]Kent explained that both Walls and Thomas received a raw score of 18 during the interview process, which was conducted by Kent and Muller. Kent and Salley discussed implementing a tie breaker since Thomas and Walls were both equally qualified for the position in the CSIU. For the tie breaker, they decided to pull the latent fingerprints on file for both Walls and Thomas, as latent fingerprints were an integral part of a CSI officer's duties. The fingerprint logs revealed that Walls had submitted several fingerprints in 2002, while Thomas had submitted none for 2002. Based on this information, Walls was selected for the CSIU position.

[9]The defendants asserted qualified immunity in their answer to the second amended complaint. See Record Document 38 at 2. However, Kent did not specifically move for dismissal based on qualified immunity in the Motion for Summary Judgment. See Record Documents 50 & 69.

a *prima facie* case of retaliation, Thomas must show that: (1) she engaged in protected activity, (2) a materially adverse action occurred, and (3) a causal link existed between the protected activity and the adverse action. See Gee v. Principi, 289 F.3d 342, 345 (5th Cir.2002); Peace v. Harvey, No. 06-5040207, 2006 WL 3068677, **1 (5 Cir. Oct. 26, 2006). If Thomas establishes a *prima facie* case of retaliation, the burden then shirts to the Salley to demonstrate a legitimate, nonretaliatory purpose for the action. See Gee, 289 F.3d at 345. If Salley articulates a nonretaliatory reason, Thomas must then bring forth evidence that Salley's stated reasons is merely pretext for unlawful retaliation. See id.; see also Foley, 324 F.3d at 316 (the elements for establishing a prima face case of retaliation under Section 1981 are identical to those that must be established under Title VII).

For purposes of the instant Memorandum Ruling, the Court will assume that Thomas has established that she engaged in protected activity and that a materially adverse action occurred. The Court will now analyze whether there was a causal connection between Thomas' grievance in February 2003 alleging racial discrimination and the alleged adverse employment action, i.e., that Thomas, under fear produced by Salley's retaliatory grievance alleging harassment and insubordination on the part of Thomas, refused a promotion/transfer to the CSIU.

There is a genuine issue of material fact as to whether Chief Roberts, either personally or through Assistant Chief Franklin, offered Thomas a position in the CISU. Chief Roberts denies that he ever made such an offer. See Record Document 69, Exhibit 5 at pp. 47-48. Further, there is a genuine issue of material fact as to when Thomas learned of the grievance filed by Salley. She contends that she knew of such grievance when she refused the promotion/transfer to the CSIU. In an affidavit filed in opposition to

the Motion for Summary Judgment, she stated that she was made aware of Salley's grievance in 2002. See Record Document 59, Exhibit A. Yet, in her deposition, she stated that she learned of the grievance only after returning from sick leave. See Record Document 69, Exhibit 6 at 143-145. According to the defendants, Thomas' time records do not indicate that she took sick leave during 2003-2004, but rather took sick leave in late 2005. See id. at 17 n. 4. Yet, the defendants do not indicate whether Thomas' sick leave records are part of the summary judgment record. While the 2000-2002 attendance records of Walls are part of the summary judgment record (Record Document 59, Exhibit AA), the Court did not locate the same records for Thomas. Thus, this Court must proceed to the qualified immunity analysis.

Qualified immunity shields a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law. See Thompson v. Upshur County, Tex., 245 F.3d 447, 456 (5th Cir. 2001). "The bifurcated test for qualified immunity is quite familiar: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and, (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident." Hare v. City of Corinth, Miss., 135 F.3d 320, 325 (5th Cir. 1998). The second prong essentially contains two distinct inquiries: "whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendant[] was objectively unreasonable in the light of that then clearly established law." Id. at 326.

Here, Thomas has alleged a violation of a clearly established constitutional right, as

she contends that she suffered retaliation in response to her complaints of race and sex based discrimination.  Likewise, her allegedly violated constitutional rights were clearly established in 2002-2003.  Thus, the key question is whether Salley's conduct was objectively unreasonable in the light of that then clearly established law.  The general orders of the SPD  permitted Salley to file a grievance against Thomas.  The grievance he filed was not only in regards to Thomas' claim of discrimination based on race and sex, but also in regards to the "intentionally vexatious . . . complaint" that contained "abusive language directed at [him]."  Record Document 59, Exhibit T.  Salley reported that due to Thomas' complaint, he felt "ill at ease and self-conscious in the presence of female and/or African-American subordinates to the point it [was] interfering with [his] job performance in directing work and correcting deficiencies."  Id.  Salley simply exercised his right under SPD general orders and took no other overt action against Thomas.  Specifically he did not speak to any of Thomas' supervisors about the grievance and did not otherwise publicly discuss the grievance.  He in no way interfered with Thomas being able to pursue her right to file a complaint of discrimination.  Thus, the Court finds Salley's conduct was not objectively unreasonable in the light of that then clearly established law and that he is entitled to qualified immunity.  Summary judgment is granted as to Thomas' Section 1981 retaliation claim against Salley.

### III.  Claims Relating to 2005 Events.

In opposing the Motion for Summary Judgment, Thomas also narrowed the scope of her claims relating to events that occurred in 2005, stating:

> Defendants contend that Plaintiff can not prove a claim of a racially hostile work environment in 2005.  Plaintiff agrees.  However, Plaintiff shows that she was subjected to a retaliatory hostile work environment for which she

> has a cause of action against the City and Kent. Lastly, Plaintiff has no
> evidence that [] Salley contributed to the retaliatory hostile work environment,
> although he approved at least one Supervisor Action Report.

Record Document 59 at 2. Thomas specifically conceded that her action for a racially

hostile work environment fails due to a lack of evidence and, accordingly, withdrew that

cause of action. See id. at 4. The record likewise reflects that Thomas has abandoned

her claim of a hostile work environment due to her gender. Based on these concessions,

it appears that Thomas is pursuing a "retaliatory hostile work environment" claim against

the City and Kent pursuant to Title VII and Section 1981.[10] The analysis under both Title

VII and §1981 is identical, "the only substantive differences between the two statutes being

their respective statute of limitations and the requirement under Title VII that the employee

exhaust administrative remedies." Jones v. Robinson Property Group, L.P., 427 F.3d 987,

992 (5th Cir. 2005).

Section 1981 "is an independent remedy and EEOC procedures need not be

employed prior to a § 1981 action." Alpha Portland Cement Co. v. Reese, 507 F.2d 607,

610 (5th Cir. 1975). "Title VII requires employees to exhaust their administrative remedies

before seeking judicial relief." McClain v. Lufkin Industries, Inc., 519 F.3d 264, 273 (5th

Cir. 2008). The employees may satisfy this requirement by filing an administrative charge

with the EEOC, thus enabling the EEOC to investigate and, if appropriate, negotiate a

resolution with an employer. See id. "Only after administrative efforts terminate may the

employee sue the employer in federal court." Id. It is well settled within the Fifth Circuit

---

[10]Section VI of Thomas' opposition is entitled, "Defendants City and Kent Retaliated
Against Officer Thomas in 2005." Record Document 59 at 46. This heading provides
further verification that Thomas' claims relating to events in 2005 are asserted against the
City and Kent, not Salley.

that "[c]ourts should not condone lawsuits that exceed the scope of EEOC exhaustion." Id.  For policy reasons, courts may "construe[] an EEOC complaint broadly but in terms of the administrative EEOC investigation that 'can reasonably be expected to grow out of the charge of discrimination.'" Id.  The Fifth Circuit employs "fact-intensive analysis," looking beyond the four corners of the document to its substance.  Id.  Under this approach, "a Title VII lawsuit may include allegations 'like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission.'" Id.

Here, Thomas filed an EEOC charge on October 28, 2005 alleging discrimination based on race and sex.  See Record Document 69, Exhibit 16.  She did not check the box for retaliation and, in her statement of particulars, she stated:

> I.    Since April of 2005 when I was promoted to the CSI unit, I have been subjected to different terms and condition[s] of employment.  I am the only current **Black female** CSI Officer in the department. . . .
>
> II.   I have been required to work an evening shift while the Supervisor responsible for my training works the day shift.  The Respondent has allowed CSI Officers without supervisory responsibility to review my work.  To the best of my knowledge no other **non Black** CSI officer had their work evaluated by their peers.  Policy 306.3 VI-B states "during the rating period of a member's performance if it is deemed unsatisfactory by the rater, he/she shall be formally counseled prior to the end of his/her rating period."  To date non[e] of the evaluations prepared by my peers were reviewed with me or signed by me.
>
> III.  I believe I have been subjected to discrimination by being denied proper training, ***because of my race, Black, and sex, female*** . . . .

Id. (emphasis added).  Thomas did not mention retaliation and/or hostile work environment in the EEOC charge.  Further, from the record it appears that she never amended her EEOC charge to include allegations of retaliation and/or retaliatory hostile work

environment.  Even under a "fact-intensive analysis," it simply can not be said that Thomas'

retaliatory hostile work environment claim can reasonably be expected to grow out of her

charge of discrimination, which references only race and sex based discrimination.

Thomas has failed to comply with the statutory requirements for bringing suit under Title

VII and, therefore, her Title VII claim is not properly before the Court.  See Johnson v.

Pointe Coupee Parish Pol. Jury, No. 06-31230, 2008 WL 64659, 2 (5th Cir. Jan. 7, 2008);

Teffera v. North Tex. Tollway Auth., No. 04-10666, 2004 WL 2980294, 2 (5th Cir. Dec. 22,

2004).

Further, the Fifth Circuit has not recognized a cause of action for retaliatory hostile

work environment pursuant to Title VII or Section 1981.[11]  See Bryan v. Chertoff, No.

05-51259, 2007 WL 216297, **1 (5th Cir. Jan. 29, 2007); Fallon v. Potter, No. 07-30522,

2008 WL 1943829, 1 (5 Cir. May 5, 2008).  In Bryan, the plaintiff asserted a retaliatory

hostile work environment claim and the defendant moved for summary judgment.  See

Bryan, 2007 WL 216297, **3.  The district court did not reach the substantive issues in the

motion, concluding that no such cause of action exists in the Fifth Circuit.  See id.  On

appeal, the plaintiff urged the Fifth Circuit to recognize a retaliatory hostile work

environment claim.  See id. at **4.  Yet, the Fifth Circuit did not "decide whether to

recognize a retaliatory hostile work environment claim or, if such a claim existed, what

effects Burlington Northern . . . were to have on the plaintiff's burden to prove actionable

harm."  Id.  Instead, the panel reasoned that the plaintiff could not establish a *prima facie*

---

[11]Louisiana's Employment Discrimination statutes are analyzed under the same
standards as Title VII.  See Nichols v. Lewis Grocer, 138 F.3d 563, 566-67 (5th Cir.1998);
Deloach v. Delchamps, Inc., 897 F.2d 815, 818 (5th Cir.1990).

case of hostile work environment, even under the <u>Burlington Northern</u> standard.  <u>See id.</u>

Here, although the defendants move for summary judgment on Thomas' retaliatory hostile work environment claim based on sufficiency of evidence, the Court will dismiss the claim even before reaching that analysis.  The existence of a retaliatory hostile work environment claim is uncertain in the Fifth Circuit and Thomas has failed to provide this Court with ample authority and/or convincing legal analysis such that it is persuaded to hold that such a claim exists.  Thus, summary judgment is granted as to Thomas' retaliatory hostile work environment claim.

In relation to events that occurred in 2005, Thomas also appears to assert a claim for intentional infliction of emotional distress ("IIED").  Specifically, she maintains that "the retaliatory hostile working environment [in 2005] was so intense that it forced [her] to resign from CSIU and take medical leave for a nervous breakdown."  Record Document 59 at 1; <u>see also</u> Record Document 1, ¶¶ 39 & 46.

The Louisiana Supreme Court has held that "in order to recover for [IIED], a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."  <u>White v. Monsanto Co.</u>, 585 So.2d 1205, 1209 (La.1991).  "The conduct must be so outrageous in character, and so extreme in degree," the court continued, "as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  <u>Id.</u>  The acts of retaliation Thomas alleges also do not meet the extreme or outrageous standard.  Even if Thomas was subjected to confusing training, unfair evaluations, and unequal

disciplining,[12] these actions do not meet the extreme and outrageous requirement and would not be considered "utterly intolerable in a civilized community." Id. Even if the Court assumes that Kent intended to make the workplace uncomfortable for Thomas, the evidence does not suggest that he intended to cause her severe emotional distress. Therefore, the retaliation alleged by Thomas does not satisfy the IIED requirements and summary judgment is granted as to Thomas' IIED claim.[13]

Finally, Thomas asserts a Section 1983 municipal liability claim against the City. The defendants moved for summary judgment on this claim, yet Thomas did not address the Section 1983 municipal liability claim against the City in her opposition. The Court finds that summary judgment is appropriate as to this claim, as Thomas makes only conclusory allegations and has failed to show that any violation of her federally protected rights is attributable to the enforcement of a municipal policy, practice, or decision of a final municipal policy maker. See Monell v. Department of Social Services of City of New York, et al., 436 U.S. 658, 98 S.Ct. 2018 (1978). In fact, the City has a policy that harassment of employees, including race and sex based discrimination, is prohibited. See Record Document 50, Exhibit 12. This policy extends to retaliation. See id. Likewise, Thomas has

---

[12]Specifically, Thomas contends that she was not given guidance, was subjected to closer scrutiny, was not invited to major crime scenes, was assigned more duties than other officers, was stonewalled, and was given unwarranted discipline.

[13]Thomas also asserts a Louisiana state law negligence claim pursuant to Louisiana Civil Code Article 2315 in relation to events that occurred in 2005. It appears that Thomas is alleging that the City is vicariously liable, pursuant to Article 2320, for Kent's conduct in the course and scope of his employment. The Court has granted summary judgment as to all claims relating to the 2005 events, thus there is no conduct on the part of Kent for which the City could be held vicariously liable. Accordingly, summary judgment is granted as to any Louisiana state law negligence claims.

failed to present evidence of "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." Evans v. City of Houston, 246 F.3d 344, 358 (5th Cir. 2001). Accordingly, summary judgment is granted as to Thomas' Section 1983 municipal liability claim against the City.

## CONCLUSION

Based on the foregoing, the Motion for Summary Judgment (Record Document 50) filed by the defendants is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to all claims, except Thomas' Section 1981 failure to promote claim against Kent in his individual capacity. The Court **DENIED** the motion as to the Section 1981 failure to promote claim against Kent due to genuine issues of material fact as to whether Thomas suffered an adverse employment action and pretext.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 15th day of September, 2008.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE